UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEHMANN MAUPIN GROUP LLC, | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| -v- | |
| HYUN-YI YOO, | |
| Defendant. | |

Plaintiff Lehmann Maupin Group LLC ("Lehmann Maupin"), by and through its undersigned counsel, as and for its Verified Complaint against Defendant Hyun-Yi "Bona" Yoo ("Yoo") herein, alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks to stop Yoo, a former Director at Lehmann Maupin, a globally-renowned art gallery, from using trade secrets and confidential information misappropriated from Lehmann Maupin, and to recover damages for Yoo's alteration and destruction of information on Lehmann Maupin's internal computer systems and database prior to her departure.

2.     In complete derogation and utter disregard of her contractual, good faith and fiduciary obligations, Yoo improperly used her access to Lehmann Maupin's computer systems and database to surreptitiously copy for herself valuable trade secret/confidential information and then maliciously delete the information from Lehmann Maupin's systems and database. This carefully orchestrated plan appears to have been designed to impede Lehmann Maupin's business while at the same time better enabling Yoo to steer its clients elsewhere for her own financial gain.

3.     Yoo's actions have harmed—and will continue to harm—Lehmann Maupin substantially, and thus Lehmann Maupin brings this action to protect its trade secret/confidential information and to hold Yoo accountable for her outrageous, duplicitous and unscrupulous conduct.

## THE PARTIES

4.     Lehman Maupin is a limited liability company duly organized under the laws of the State of New York, with its principal office located in the County of New York.

5.     Yoo is an individual who, on information and belief, resides in the State of New York, County of New York.

## JURISDICTION AND VENUE

6.     Yoo is subject to the personal jurisdiction of this Court because, on information and belief, she is a resident of the State of New York.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Lehmann Maupin brings claims arising under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq* and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.* Moreover, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the non-DTSA claims brought by Lehmann Maupin.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Yoo, on information and belief, resides in this district and because the events giving rise to this action occurred in this district.

## THE UNDERLYING FACTS

**A.     The Parties and Their Relationship**

9.     Founded by Rachel Lehmann and David Maupin in 1996 in New York City, Lehmann Maupin has been instrumental in introducing numerous artists from around the world

in their first New York exhibitions; it is well-known both domestically and internationally for its representation of artists who create groundbreaking and challenging forms of visual expression concerning essential matters that shape today's culture.

10.     Lehmann Maupin caters to a diverse range of clients (artists and collectors) from not only the United States, but also Europe, Asia, Africa and the Middle East.  For example, in Asia, Lehmann Maupin is recognized as a leading gallery, with deep expertise accumulated over the years, including 20-plus years of experience representing important Korean artists.  Given the significant interest in its represented artists abroad, its expertise in international markets and its desire to explore dynamic opportunities in new markets, Lehmann Maupin expanded its physical presence from New York City to Asia, opening galleries in Hong Kong in 2013 and Seoul in 2017.

11.     Lehmann Maupin's influence has grown organically over time through its deep connection with its represented artists and collectors.  These lasting connections are cultivated by Lehmann Maupin's high-end, bespoke services, which showcase artists to collectors most likely to be interested in the represented artwork.  Integral to this is the use of the trade secret/confidential information Lehmann Maupin has gathered over the two-plus decades of its existence.  Such information includes proprietary client lists and profiles, which have been generated and refined over the years through great expense and effort by cultivating the client relationships.  Lehmann Maupin considers this information to be among the most valuable, special and unique assets of the gallery.

12.     Yoo first began working with Lehmann Maupin as a consultant in January 2015 to handle some of the gallery's sales.  Lehmann Maupin subsequently brought Yoo on full-time as an Associate Director and eventually made her a Director in 2017, which is the highest

position achievable at Lehmann Maupin.  As a Director, Yoo was responsible for a substantial percentage of Lehmann Maupin's Korean sales and she was the relationship manager for an equally substantial portion of the gallery's Korean clients.  Yoo's role, however, was not limited to sales and managing relationships, she also was considered a valuable leader at the gallery and was prominent in establishing the gallery's new strategic positioning in Korea:  indeed, she oversaw the gallery's pioneering expansion there, playing a critical role in opening the Seoul gallery.  Given her importance at the gallery, Lehmann Maupin entrusted Yoo with some of the gallery's most sensitive client information for the Korean market; this information is particularly sensitive, important and valuable to Lehmann Maupin as very few (if even any other) American galleries currently have the same visibility into, and understanding of, that market as Lehmann Maupin.

13.     Yoo completely blindsided Lehmann Maupin when she gave notice on or around October 18, 2018, that she was leaving the gallery to accept a comparable position for another gallery.  Similarly unexpected was the urgency with which Yoo wanted to leave Lehmann Maupin.  Despite her senior role at the gallery and her substantial integration with the gallery's Asian- and Korean-focused businesses, Yoo initially stated her last day of employment would be the very following day, October 19, 2018—obviously well short of any reasonable amount of time to fully transfer her roles and responsibilities to her colleagues without causing significant disruption to the businesses with which she was so heavily involved.  Yoo eventually agreed to give Lehmann Maupin a few more days—until October 22, 2018—than she initially wanted to give the gallery, which clearly still was not enough time to mitigate fully the disruption caused by her abrupt departure.  Yoo and Lehmann Maupin finally parted ways on October 23, 2018, as

Yoo needed an extra day to return the laptop and tablet Lehmann Maupin loaned her during her employment.

14.     After her departure, it became readily apparent why Yoo was rushing to end her relationship with Lehmann Maupin.  On information and belief, she is planning to leverage the valuable sales and contacts she obtained at Lehmann Maupin in her new role.

**B.      Lehmann Maupin's Trade Secret/Confidential Information**

15.     An important part of Lehmann Maupin's success rests on its ability to create efficient art markets by pairing suppliers of artwork (artists) with demanders of artwork (collectors).  Often, this means that Lehmann Maupin must be able to anticipate its collectors' demand for a given artist's artwork.  To do so meaningfully, Lehmann Maupin relies on a wealth of information that it (by and through its consultants and/or employees) continuously gathers from its clients over the course of its dealings, including clients' personal contact information, as well as internal running notes developed over the course of the client relationship, which detail clients' tastes and preferences.  Most of this information is non-public and was amassed through Lehmann Maupin's long-lasting, personal relationships with its clients.  Thus, this information is unique and invaluable to Lehmann Maupin.

16.     Lehmann Maupin stores this valuable information in an internal database called ArtBase, which is the lifeblood and nucleus of all of Lehmann Maupin's client information.  As such, access to ArtBase is restricted; only persons with appropriate credentials can log into ArtBase and view its contents.  Moreover, Lehmann Maupin requires each person who obtains ArtBase credentials to sign a confidentiality agreement acknowledging, among other things, that she will not disclose any information contained in ArtBase outside of Lehmann Maupin and that she will use such information only in performance of her duties working for, or on behalf of, Lehmann Maupin.

**C.**     **Yoo's Access to Lehmann Maupin's Trade Secret/Confidential Information**

17.     As stated above, Yoo obtained access to the gallery's trade secret/confidential information for the sole purpose of providing her with the accumulated insights and know-how (amassed over many years and at great expense) necessary for Yoo to achieve the gallery's business objectives in the areas for which she had oversight.  To ensure its information remained its property and confidential, Lehmann Maupin required Yoo to execute a Confidentiality and Non-Solicitation Agreement (the "Agreement") prior to granting her access, which she did. Pursuant to the Agreement, Yoo acknowledged and agreed that Lehmann Maupin's trade secret/confidential information (defined therein as "Confidential Information") included:

> "any of the information concerning Lehmann Maupin's clients, prospective clients, marketing plans, represented artists, employees and all other confidential, private and proprietary information which relates to the existing proposed or anticipated business, services or commercial activities of the the Gallery, in whatever form, whether written or machine-readable, including, but not limited to, information, gathered or obtained, directly or indirectly, by any consultant during the course of his/her engagement, in whatever capacity, with Lehmann Maupin, including, but not limited to any such information that is contained in or used in connection with any systems, resources, applications, equipment or tools used by the Gallery".

(Agreement ¶ 1.)

18.     Moreover, Yoo acknowledged and agreed that she would be "making use of, acquiring or adding to the Confidential Information during the term of [her] engagement with the Gallery"; that the Confidential Information "is the property of and confidential to the Gallery"; that the Confidential Information "represents valuable, special and unique assets of the Gallery" and that the "[a]ccess to and knowledge of [the Confidential Information was] essential to [her] duties as a Consultant of the Gallery."  (Agreement ¶ 2.)

19.     Yoo similarly acknowledged and agreed that she would not, "during the term of [her] engagement with the Gallery or at any time thereafter directly or indirectly (i) disclose, in

whole or in part, Confidential Information to any person or entity for any reason or purpose whatsoever, except on behalf of the Gallery in accordance with the Gallery's policies or (ii) make use of Confidential Information for [her] own purposes or for the benefit of any person or entity other than the Gallery in accordance with the Gallery's policies." (Agreement, ¶ 3.)

20.     Further, Yoo acknowledged and agreed not to "remove, copy, download or transmit any Confidential Information during my engagement with the Gallery or following the termination of my employment with the Gallery" and to "immediately return to the Gallery all copies of any Confidential Information or any portion thereof in my possession, whether in written or machine readable form" upon the earlier of the Gallery's request or the termination of her engagement with the Gallery. (Agreement ¶ 4.)

21.     To the extent she had any specific information "with respect to clients, prospective clients, orders or artists obtained by [her] prior to [her] engagement with the Gallery", Yoo acknowledged and agreed that, "by adding or instructing others to add any [such] information to the Confidential Information, I shall assign and transfer to the Gallery any rights I may have in such information without any further action on my part and that thereafter such information shall become part of the Confidential Information and shall be subject to the terms" of the Agreement. (Agreement ¶ 5.)

22.     In addition, Yoo acknowledged and agreed that:

> "[d]uring the course of my engagement with Lehmann Maupin and for one (1) year thereafter, I shall not directly or indirectly as owner, director, officer, shareholder, partner, investor, proprietor, manager member, employee consultant, advisor, agent or otherwise persuade or attempt to persuade any client of the Gallery that was (i) a client of the Gallery before I started my engagement with the Gallery or (ii) a client or prospective client of the Gallery with whom I worked or had contact with during the term of my engagement with the Gallery, to restrict, limit or discontinue using the services provided by the Gallery or to reduce the amount of business which any such client has customarily done with the Gallery, or solicit, take away,

or attempt to solicit or take away from the Gallery, any such clients or solicit any specific commission or assignment obtained by the Gallery from clients."

(Agreement ¶ 6.)

23.     Finally, Yoo acknowledged and agreed that:

"during the course of my engagement with the Gallery, I may have the ability to access the [C]onfidential [I]nformation from outside of the Gallery's offices with written authorization of a director of the Gallery using either my own personal computer equipment or the computer equipment of others.  I acknowledge that this is a privilege and shall take all reasonable precautions to safeguard the information contained in the Confidential Information against unauthorized use or reproduction by third parties.  Neither anything contained in this paragraph or my being given permission to access the Confidential Information from outside the Gallery's premises shall be deemed a waiver by the Gallery of any of the restrictions and provisions contained herein."

(Agreement ¶ 9.)

## D.     A Forensic Investigation Reveals Yoo's Surreptitious and Wrongful Conduct

24.     While Yoo's hasty departure to a competitor was alarming, Lehmann Maupin had no reason to suspect at any time before her departure or immediately thereafter that something was amiss.  To the contrary, they expected Yoo to be honorable, to abide by her contractual obligations and to be a faithful employee.  However, while trying to work through the process of reassigning Yoo's clients to other personnel at the gallery, some sales team members noticed substantial alterations to certain client information contained in ArtBase.  Upon a further review, personnel uncovered systematic changes to a substantial number of the client profiles for which Yoo was responsible for overseeing while at Lehmann Maupin.  On information and belief, these changes were all made by Yoo, or at her direction, in the days leading up to her departure.  These alterations were not authorized by the gallery and certainly were not disclosed by Yoo either before or after her departure.

25.     Included among the alterations were wholesale deletions of client notes (some dating back years), which Lehmann Maupin extensively relies on to determine how and to whom to market artwork.  The deletion of these notes is especially important because, in many instances, Yoo would have been the only person knowledgeable about the content of the notes— *e.g.*, notes from meetings where she was the only attendee from the gallery.  Moreover, Yoo modified many client names (ostensibly rendering them useless), removed key contact information and deleted certain client characteristic information.  Yoo's actions were methodical and the resulting damage is systemic to the clients she serviced.  The information that Yoo altered, deleted or otherwise modified is needed to transition Yoo's portfolio of Lehmann Maupin business to other sales personnel.

26.     A computer forensics and eDiscovery vendor has been retained to assist Lehmann Maupin with investigating the full extent of Yoo's deliberate and wrongful conduct.  The forensic investigation has not yet been completed, but so far the vendor has discovered that, in addition to the ArtBase alterations, Yoo systematically purged over 500 files from her Lehmann Maupin-associated cloud storage (Google Drive) between October 15 and 23, 2018; a number of these documents contain key information needed by Lehmann Maupin to execute its business strategies in Asia generally, and Korea specifically.  The deleted items included notes from artist studio visits, collector preferences and numerous working files.

27.     In addition, the vendor also discovered that Yoo transferred certain internal files between October 16 and 19, 2018, to herself before she deleted them.  Included among these files are sales information, sales lead lists and artist meeting debriefs.

28.     Even more egregious, it appears that, based on the forensic investigation, Yoo went through particularly great lengths to surreptitiously secure for herself two extremely

valuable client files at the expense of the gallery.  In particular, whereas she simply deleted (sometimes after copying) many other files from the cloud drive, it appears that Yoo copied these specific files to an unknown device and, after copying them for herself, did the following (in sequential steps):  (1) changed the access rights to the files' hyperlinks, such that no one at the gallery could access them via hyperlink anymore without the appropriate permissions; (2) configured the hyperlinks to the files in such a way that gallery personnel who already had the hyperlink in their files could no longer see the hyperlink; (3) deleted the contents of the files; (4) renamed the empty files from English file names to Korean file names and (5) deleted from Google Drive the empty, renamed files.

29.     The actions taken and the order in which they were taken on these files are highly suspicious and clearly indicate a level of sophistication and awareness by Yoo of what she was doing—namely, copying highly sensitive information while evading detection.  Indeed, because of the process Yoo used, the contents for these files appear unrecoverable so, in a perverse irony, she now may be the only person with the trade secret/confidential information found in these files.  These particular files are especially important to Lehmann Maupin because they contain the gallery's proprietary lists of existing and target collectors with relevant identification information and historical sales data.  Lehmann Maupin uses these types of files at major art fairs, which are critical shows where collectors, galleries and curators convene for trade in, and the discovery of, art.

30.     All of the above is in clear violation of the Agreement.  Given the timing of her rushed departure, the only plausible explanation for the alterations to the client information in ArtBase, the wholesale purging of files containing key information needed to execute on Lehmann's Maupin's strategic visions and the copying of Lehmann Maupin's internal files

(while attempting to cover her tracks) is that Yoo is trying to frustrate her former employer's ability to service its clients in order to steer those clients to herself.

31.    Accordingly, by this action, Lehmann Maupin seeks to preclude Yoo from misappropriating its trade secret/confidential information; to preclude Yoo from breaching her non-disclosure, non-use and non-solicitation obligations under the Agreement and to recover appropriate compensatory and punitive damages arising from Yoo's egregious, willful and deceitful conduct.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets in Violation of the DTSA)

32.    Lehmann Maupin restates and realleges each and every allegation in the foregoing paragraphs as if the same were set forth herein.

33.    As set forth herein, Yoo's actions were in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*

34.    Lehmann Maupin possesses valuable trade secrets and confidential information, whose economic value in part derives from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information, such as Lehmann Maupin's current and future competitors in the art industry.

35.    The information that Yoo copied from Lehmann Maupin's cloud storage account contained the gallery's trade secrets, including information concerning Lehmann Maupin's business strategies and client profiles.

36.    The trade secret information that Yoo copied is related to Lehmann Maupin's products and/or services, which are used in, or impact, interstate or foreign commerce. Although

based in New York City, Lehmann Maupin's operations are not limited to the State of New York, but rather reach throughout the United States, Europe, Asia, Africa and the Middle East.

37.     The trade secret information that Yoo copied was developed by Lehmann Maupin (by and through its consultants and employees) through substantial effort and the information contained therein was kept in confidence by Lehmann Maupin.  That information is not readily ascertainable by anyone not engaged or employed by Lehmann Maupin.

38.     The trade secret information that Yoo copied derives independent economic value from not being generally known to Lehmann Maupin's competitors and such information is not readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

39.     Lehmann Maupin has taken great efforts to keep such information confidential, including by requiring the confidentiality of such information in agreements, by requiring security credentials to access the information and by other means.

40.     Lehmann Maupin provides its trade secret information to employees only as strictly necessary to effectuate its business objectives.

41.     The trade secret information that Yoo copied constitutes trade secret information under the DTSA as well as New York law.

42.     At the time she copied the trade secret information, Yoo had knowledge of the secret nature of Lehmann Maupin's trade secret information under circumstances that give rise to a duty to maintain the secrecy and limit the use of such information.  She also knew the high value and uniqueness of the information such that it was trade secret information by and through, among other things, her senior, leadership role as Director and the Agreement she acknowledged and executed, which prohibits her from disseminating or disclosing the information and from

12

retaining for herself copies of such information after the termination of her employment with Lehmann Maupin.

43.     On information and belief, Yoo copied Lehmann Maupin's trade secret and other confidential information with the intention of retaining such information after the end of her employment with Lehmann Maupin and using such information in connection with her new role.

44.     Yoo thus has misappropriated Lehmann Maupin's trade secret information as prohibited by the DTSA.

45.     Under these circumstances, Yoo's misappropriation of Lehmann Maupin's trade secret information was willful and malicious, and designed to aid a competitor.

46.     As a direct and proximate result of Yoo's misappropriation of Lehmann Maupin's trade secret information, Lehmann Maupin has suffered and will continue to suffer irreparable harm and loss, and Lehmann Maupin will continue to suffer such damages unless Yoo is enjoined and restrained by this Court.

## SECOND CAUSE OF ACTION

### (Stored Communications Act)

47.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

48.     Yoo's purposeful deletions of client information from Lehmann Maupin's computer systems and database constituted one or more violations of 18 U.S.C. § 2701, because Yoo intentionally accessed Lehmann Maupin's electronic facilities that provide electronic communication services, including records on Lehmann Maupin's Google Drive account, and, exceeding the scope of her authorization in violation of the Agreement, altered, destroyed and/or prevented access to data and electronic communications.

49.    Pursuant to 18 U.S.C. § 2707, Lehmann Maupin is entitled to equitable relief, compensatory damages and its reasonable attorney's fees and other litigation costs.  Lehmann Maupin is also entitled to punitive damages because Yoo's violation of the Stored Communications Act was willful and/or intentional.

50.    As a direct and proximate result of Yoo's conduct described herein, Lehmann Maupin has suffered and will continue to suffer irreparable harm and loss, and Lehmann Maupin will continue to suffer such damages unless Yoo is enjoined and restrained by this Court.

### THIRD CAUSE OF ACTION

**(Misappropriation of Confidential Information under New York Law)**

51.    Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

52.    Lehmann Maupin has attempted to prevent disclosure of its confidential and proprietary information.

53.    Nevertheless, Yoo has knowingly and willfully misappropriated and, on information and belief, is exploiting for her own economic advantage, confidential and proprietary information of Lehmann Maupin, including, but not limited to, information concerning Lehmann Maupin's business strategies and client profiles to which Yoo gained access solely through her engagement and employment at Lehmann Maupin.

54.    In addition to having misappropriated Lehmann Maupin's confidential and proprietary information for her own advantage, it is inevitable that she will disclose the misappropriated information in her new role (if she has not done so already).

55.    As a direct result of Yoo's wrongdoing, Lehmann Maupin has been damaged in an amount to be determined at trial.

56.     Yoo's actions were committed knowingly, willfully and in conscious disregard of Lehmann Maupin's rights.  Accordingly, Lehmann Maupin is entitled to recover punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Breach of the Confidentiality and Non-Solicitation Agreement)

57.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

58.     Before Yoo began employment with Lehmann, she signed the Confidentiality and Non-Solicitation Agreement, in which, among other things, she acknowledged and agreed that she would not "directly or indirectly (i) disclose, in whole or in part, Confidential Information to any person or entity for any reason or purpose whatsoever, except on behalf of the Gallery in accordance with the Gallery's policies or (ii) make use of any Confidential Information for [her] own purposes or for the benefit of any person or entity other than the Gallery in accordance with the Gallery's policies." (Agreement ¶ 3.)  Further, she acknowledged and agreed and she would not "remove, copy, download or transmit any Confidential Information" during or after her engagement with Lehmann Maupin.  (Agreement ¶ 4.)  In addition, she acknowledged and agreed to "immediately return to the Gallery all copies of any Confidential Information or any portion thereof in [her] possession", regardless of the format of the information, upon the end of her engagement with Lehmann Maupin.  (Agreement ¶ 4.)

59.     In addition, Yoo acknowledged and agreed that:

> "[d]uring the course of my engagement with Lehmann Maupin and for one (1) year thereafter, I shall not directly or indirectly as owner, director, officer, shareholder, partner, investor, proprietor, manager member, employee consultant, advisor, agent or otherwise persuade or attempt to persuade any client of the Gallery that was (i) a client of the Gallery before I started my engagement with the Gallery or (ii) a client or prospective client of the Gallery with whom I worked or had contact with during the term of my

engagement with the Gallery, to restrict, limit or discontinue using the services provided by the Gallery or to reduce the amount of business which any such client has customarily done with the Gallery, or solicit, take away, or attempt to solicit or take away from the Gallery, any such clients or solicit any specific commission or assignment obtained by the Gallery from clients."

(Agreement ¶ 6.)

60.     Lehmann Maupin has fully complied with and performed all of its obligations under the Agreement.

61.     Yoo's obligations under the Agreement are not overly broad, nor are they the result of duress or coercion.

62.     To the extent Yoo's obligations under the Agreement are deemed to be overly broad, Lehmann Maupin is entitled to "blue penciling" of the Agreement to preserve Yoo's essential obligations not to retain or disclose Lehmann Maupin's trade secret and other confidential information and not to solicit any of Lehmann Maupin's clients for a period of one year following the termination of her employment with the gallery.

63.     All conditions required by the Agreement for Yoo's performance have occurred.

64.     As set forth above, Yoo has breached the Agreement by retaining trade secret and other confidential information; failing to return that information to Lehmann Maupin when she terminated her employment and, on information and belief, providing the information to third parties.  Moreover, on information and belief, Yoo has solicited (or plans to solicit) Lehmann Maupin's customers during the non-solicitation period.

65.     The full extent of Yoo's breach of the Agreement is not known to Lehmann Maupin at this time.  Discovery is necessary to unveil the degree to which Yoo has retained and/or disclosed Yoo's trade secret and other confidential information.

66.     As a direct and proximate result of Yoo's breach of the Agreement, Lehmann Maupin has suffered and will continue to suffer irreparable harm and loss and it will continue to suffer such damages unless Yoo is enjoined and restrained by this Court.

## FIFTH CAUSE OF ACTION

### (Conversion)

67.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

68.     On information and belief, as of the filing of this Complaint Yoo remains in wrongful possession of Lehmann Maupin's trade secret/confidential information.

69.     Yoo wrongfully has asserted dominion or control over Lehmann Maupin's trade secret/confidential information in a manner inconsistent with Lehmann Maupin's ownership and entitlement to such information.  Because Yoo has altered, destroyed and/or prevented access to certain client information previously on Lehmann Maupin's systems and database, Yoo has taken exclusive dominion and control over such information.

70.     As a direct and proximate result of Yoo's conversion of Lehmann Maupin's trade secret/confidential information, Lehmann Maupin has suffered direct financial and other business injury and it will continue to suffer such damages unless Yoo is enjoined and restrained by this Court.

## SIXTH CAUSE OF ACTION

### (Breach of the Duty of Loyalty/Faithless Servant)

71.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

72.     During Yoo's employment, she owed certain duties to Lehmann Maupin, including, but not limited to, the duties of loyalty and fidelity.

73.     By virtue of such duties, Yoo was prohibited from acting in a disloyal manner and was required at all times to act in accordance with the best interests of Lehmann Maupin.

74.     By reason of the conduct set forth above, Yoo violated and breached her duties of loyalty and fidelity to Lehmann Maupin, including by, on information and belief, acting in her own self-interests and in the interests of Lehmann Maupin's competitor while she was still employed at Lehmann Maupin.

75.     Yoo's breach of her duties of loyalty and fidelity to Lehmann Maupin renders her a "faithless servant" within the meaning of the law.

76.     During her employment, Yoo received compensation and other things of value from Lehmann Maupin at times when she was in violation of her duties of loyalty and fidelity.

77.     That compensation included a substantial six-figure annual salary.

78.     Yoo's actions were extreme and outrageous and have been undertaken maliciously, deliberately and with the willful intent to cause harm to Lehmann Maupin and to benefit herself.

79.     As a result of Yoo's actions, Lehmann Maupin has lost control of its trade secret/confidential information, causing it substantial and irreparable damage.

80.     Lehmann Maupin has suffered actual injury as a direct, foreseeable and proximate result of Yoo's breaches of her duties of loyalty and fidelity.

81.     By reason of the foregoing, Lehmann Maupin is entitled to recover compensatory damages and punitive damages for Yoo's breach of her duties of loyalty and fidelity, and disgorgement of monies paid to Yoo during her period of disloyalty, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Tortious Interference)

82.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

83.     Lehmann Maupin has profitable business relationships with its clients.  Yoo has direct knowledge of the existence of those relationships and that, in order to retain and further cultivate those relationships, Lehmann Maupin must be able to continue to provide value-adding services, such as by pairing sellers of specific types of artwork with those who demand their artwork.

84.     Yoo intentionally interfered with those relationships by wrongfully altering, deleting or otherwise modifying trade secret/confidential information housed in Lehmann Maupin's database and by purging from Lehmann Maupin's computer systems files containing other trade secret/confidential information, all in violation of her Agreement with Lehmann Maupin.

85.     As a direct and proximate result of Yoo's tortious interference, Lehmann Maupin has suffered monetary damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Unfair Competition)

86.     Lehmann Maupin restates and realleges each and every allegation contained in the in the foregoing paragraphs as if the same were set forth herein.

87.     Lehmann Maupin's trade secret/confidential information has been accumulated by the gallery through great labor and expense.

88.     Lehmann Maupin's trade secret/confidential information is both a benefit to, and property of, Lehmann Maupin solely.

89.     Yoo has no rights in Lehmann Maupin's trade secret/confidential information and is misappropriating the information for her commercial advantage over Lehmann Maupin.

90.     As a direct and proximate result of Yoo's misappropriation of Lehmann Maupin's trade secret/confidential information, Lehmann Maupin has suffered direct financial and other business injury and it will continue to suffer such damages unless Yoo is enjoined and restrained by this Court.

**WHEREFORE**, Lehmann Maupin demands judgment against Yoo as follows:

(i)     For injunctive relief in the form of an order temporarily, preliminarily and/or permanently enjoining Yoo from misappropriating Lehmann Maupin's trade secret/confidential information and from breaching her non-disclosure, non-use and non-solicitation obligations under the Agreement;

(ii)    For compensatory damages in an amount to be determined at trial;

(iii)   For punitive damages in an amount to be determined at trial;

(iv)    For costs and disbursements of this action, including Lehmann Maupin's reasonable attorney's fees; and

(v)     For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Lehmann Maupin demands a trial by jury

on all applicable issues.

Dated: New York, New York
       November 29, 2018

TARTER KRINSKY & DROGIN LLP
*Attorneys for Plaintiff*

By: _____
       Laurent S. Drogin
       Richard C. Schoenstein
       Darnell S. Stanislaus
1350 Broadway
New York, New York 10018
(212) 216-8000
ldrogin@tarterkrinsky.com
rschoenstein@tarterkrinsky.com
dstanislaus@tarterkrinsky.com